## WELBORN *vs.* SHIRLY.

The office of a possessory warrant is to restore the possession of a chattel to a claimant from one who has obtained it by fraud, seduction, etc., or when the property has been taken without his consent. It deals with possession and not title. It is therefore not the proper remedy where the defendant obtained the chattel in dispute in exchange for another, even though false representations may have been made in the negotiation leading to the trade.

Possessory warrant.    Before  Judge ERWIN.    Haber sham Superior Court.    April Term, 1880.

Reported in the opinion.

C. H. SUTTON; CRANE & PASSMORE, for plaintiff in error.

BARROW & IRWIN, by GEORGE D. THOMAS, for defendant.

HAWKINS, Justice.

The  plaintiff  in  error  sued  out  a  possessory  warrant against Shirly, the defendant in  error, for the possession of a certain mule alleged to have gone into the possession of  Shirly by fraud.

On the trial of the cause the evidence was about as follows : Welborn was passing  from  near  Toccoa to Rabun county, when  about  night Shirly overtook  him and proposed to swap for  his mule.   Welborn's son went over to Shirly's house to look at Shirly's horse, and told his father he thought it would do to swap.   Shirly told plaintiff that his horse was  only eleven  years old.   Plaintiff said if  his horse was over eleven  years old  he would not have him, and Shirley said he was  not  more than eleven years old.    It was in the *night*.    Shirly was  to give twelve dollars to boot—eight dollars in a  steer, and  four dollars in any  good  trade.   Next  morning  the  horse's  legs were badly swelled and he was stiff in his limbs.    Welborn did not call for the  steer or the  four  dollars—the horse was worthless.

Adolph Welborn, the son, corroborated the statements of  his father; heard his father tell Shirly if the horse was more  than  eleven years  old  he would  not swap  for his horse ;  horse was worthless.

It was also proven that the horse was over twenty years old.

The defendant relied upon its being a fair trade. Said it was in the night and the son of plaintiff examined the horse and advised his father to trade. ·Defendant's son also swore it was as fair a trade as he .ever saw and agreeable all around.

Upon the trial of the cause before the county judge, he awarded the possession to Welborn, when, on *certiorari,* the judge of the superior court, upon the facts, reversed the decision of the county judge, and this is the error complained of. It did not appear that Welborn offered to return the horse, or demanded the mule, or that Shirly was insolvent.

The only legal object of a possessory warrant is to restore the possession of a chattel.to a claimant from one who has obtained it by fraud, seduction, etc., or when the property has been taken without his consent. The office is to deal with possession, and not title. In fact, the law inhibits inquiry concerning the title, and we apprehend the writ was not designed by the legislature to rescind every bad trade that·parties make in the exchange of horses or other personal property because of fraud. It is a summary remedy, and in derogation of the common law, and must be construed strictly. The object was to quiet the possession of personal property, and its end to restore the property to the one having the *recent* quiet possessory right thereto, and not to settle the title or the *frauds* connected with the obtainment or retention of title. If A purchases a horse from B, and in the negotiations makes false representations, the remedy would be trover or an action for deceit, or on the warranty; but if A obtains the possession of B's horse by fraud, falsehood or false representations amounting to legal fraud, then his action would be a possessory warrant. In any case where the possession was obtained by fraud, seduction or without consent, the remedy by possessory warrant is proper, but in no other case, and in these cases the investigation must be confined to the question of possession alone.

In the case at bar it does not appear by the record upon what ground the judge put his decision.

It may have been upon the absence of sufficient evidence to show fraud in the trade, or that the defendant in error was solvent and responsible in damages, or the failure of the plaintiff to return the mule, or upon the ground that the trade was a fair one, and the evidence seems to be conflicting.

We therefore affirm the judgment of the court below.